THE STATE OF NEBRASKA, EX REL. W. E. PEEPLES,
v. JOHN M. THAYER.

Constitutional Law :  BOUNDARIES OF COUNTY.   The act of the territorial legislature of March 7th, 1855, entitled "An act defining the boundaries of counties therein named, and for other purposes," in so far as it defines the boundaries of Blackbird county, is inoperative and void, as being in violation of the act of Congress approved May 30, 1854, entitled "An act to organize the territory of Nebraska," and which reserved from within the boundaries of the territory the Indian reservation of which said Blackbird county was a part.

ORIGINAL application for mandamus.

*Barnes Brothers*, for relator.

*William Leese, Attorney General*, for respondent.

REESE, J.

This is an application to this court, in the exercise of its original jurisdiction, for a writ of mandamus to the governor of the state for the purpose of requiring him to designate the temporary county officers and county seat of the county of Blackbird, in order that said county may become organized as one of the counties of the state. The attorney general, representing respondent, appeared and demurred to the petition and alternative writ, upon the ground that they do not state facts sufficient to constitute a cause of action, or entitle relator to the relief prayed.

From the petition and record before us it appears that prior to the commencement of this action the citizens of the territory which it is alleged constitutes the county of Blackbird presented to respondent their petition for the organization of said county, the appointment of special county commissioners, and the designation of a temporary county seat, under the provisions of article II. of chapter 17, Compiled Statutes, entitled "Organization of new counties." The prayer of this petition was refused by respondent on the 28th day of June, 1887, for the reason that he, respondent, did not believe he had authority so to do under the provisions of the act of the territorial legislature, by which the boundaries of Blackbird county were alleged to have been established.

Two questions are presented by the demurrer for decision, which are: *First*, As to the authority of the judicial department of the state to coerce the chief executive officer to perform a ministerial act; and *Second*, Should this power exist, whether it is the duty of respondent to perform the acts prayed for in the petition of relator.

As we view the case, the decision of the second or last question must be decisive of the whole case, and therefore it becomes unnecessary to inquire as to the first.

Considerable has been said by counsel in the argument as

to the great inconvenience and annoyance to the settlers upon the territory in question, resulting from a want of proper county organization, the establishment of county government, of public schools, and many other conveniences and necessaries of which they are deprived. The condition of those people is, no doubt, to be deplored, and some action should be taken by the proper authorities at an early day for their relief and for the establishment of proper government; but this action cannot, perhaps, be taken by the executive alone. The case at bar involves simply the question of the duty of respondent under the law, and no consideration can properly enter the case to aid in its solution excepting this one.

The act of the territorial legislature by which it is claimed the boundaries of Blackbird county were established, was approved March 7th, 1855, more than thirty years ago. The boundaries of the county are defined in the third section of the act, which is as follows: "That the boundaries of Blackbird county are as follows: Beginning at the north-east corner of Burt county, thence up the middle of the main channel of the Missouri river to a point two miles north of where Omaha creek enters into the Missouri river bottom, thence west 30 miles, thence south to a point due west of the beginning. That the seat of justice of said county be and the same is hereby located at Blackbird City." Laws of 1855, 342.

It may well be doubted whether the partial boundary thus established would be sufficient to require the executive to organize the territory thus sought to be enclosed. Yet this question need not be decided, and will not be discussed. At the time of the passage of the act above referred to, the territory in question constituted a part of an Indian reservation, and it becomes important to inquire whether or not at that time it was competent for the territorial legislature to assert its authority over it to the extent of the establishment of county boundaries.

Among other provisions of section 1 of the act of congress approved May 30, 1854, entitled "An act to organize the territory of Nebraska"—General Statutes of Neb., 37 —is the following proviso: "*Provided further*, That nothing in this act contained shall be construed to impair the rights of person or property now pertaining to the Indians in said territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory, which, by treaty with any Indian tribe, is not, without the consent of said tribe, to be included within the territorial limits or jurisdiction of any state or territory; but all such territory shall be excepted out of the boundaries, and constitute no part of the territory of Nebraska until said tribe shall signify their assent to the president of the United States to be included within said territory of Nebraska, or to affect the authority of the government of the United States to make any regulations respecting such Indians, their lands, property, or other rights, by treaty, law, or otherwise, which it would have been competent to the government to make if this act had never passed."

It will be seen by the foregoing that all "*such* territory *shall be excepted* out of the boundaries, and constitute *no part of the territory* until the assent of the tribe occupying the territory reserved should be obtained."

It is not claimed that this assent had been obtained at the time of the passage of the act.

By the several treaties between the United States and the Omaha Indians—Revision of Indian Treaties, pp. 564, 559—and the Winnebago Indians—Id., 1014—and the memorial and joint resolution adopted by the territorial legislature of Nebraska of January 23, 1856—Laws 1856, 236—as well as by the public history of the territory and state, it appears that the rights of the Indians to the reservation remained unextinguished up to the time of the admission of the territory as a state in 1867. This being

true, it is apparent that at the time of the passage of the act of the territorial legislature in 1855, establishing the boundaries of Blackbird county, neither the legislature nor any other department of the territorial government had any jurisdiction or authority to establish county boundaries within the reservation, and that the act in that behalf was void.

This also has been the evident opinion of the territorial and state officers and legislatures ever since the passage of the act of 1855. No steps have been taken and no effort has been made to organize the county nor to make it a part of the settled portion of the state. There has been no recognition whatever of the existence of such a county for thirty years, and when the state legislature in 1873, by its act of March 3d of that year, defined the boundaries of all the, then, counties of the state, no reference was made to Blackbird county, and the territory which it is now claimed constitutes that county was not included as a county, save that part which was included within the county of Cuming. Subsequent to that time—in 1879—another portion of the reservation was placed within the boundaries of Burt county, and in 1881 another portion was added to Wayne county. The act of 1879, defining the boundaries of Burt county— Laws 1879, 77—not only separates a part of this territory from the alleged county of Blackbird, but recognizes the existence of the Omaha reservation, by commencing at the south-east corner thereof as the initial or beginning point of the boundary line of Burt county. These facts present another suggestion, which is, that if respondent has authority to cause the organization of the county of Blackbird under the provisions of the act of 1855, he must do so with direct reference to the boundaries established by that act. He has no authority to depart therefrom. The exercise of that authority would be to ignore the acts of the legislatures of 1873, 1879, and 1881, by which great con-

fusion would ensue in the collection of state and county revenues, and in the enforcement of the laws—a step which any executive might well hesitate to take until directed by legislative enactments which would remove the difficulty.

We therefore hold that the act of 1855, in so far as it assumed to establish the boundaries of Blackbird county, was void, and that it is not the duty of respondent to comply with the petition asking the organization of that county.

The writ is therefore denied.

WRIT DENIED.

THE other judges concur.